MELINDA SAWYER, Now Known as MELINDA PORTER, Appellant, v DAVID SAWYER, Respondent. [664 NYS2d 505] —Order unanimously affirmed without costs. Memorandum: After a hearing, Supreme Court denied plaintiff's motion to relocate with Sydney, the parties' four-year-old daughter, from Buffalo

to Delaware. The record supports the court's decision that plaintiff failed to meet her burden of establishing that the relocation was in the best interests of the child.

After the parties separated, plaintiff informed defendant that she and Williams Porter, who then lived in Bethany Beach, Delaware, were going to marry. In December 1995 Porter moved to Buffalo and found employment as a welder, an occupation in which he had been engaged for 15 years. Plaintiff and defendant were divorced in May 1996 and, one month later, plaintiff told defendant that she, Sydney and Porter were going to Delaware for the summer because Porter had obtained a temporary position with a company to operate a fishing boat for company clients. Disregarding defendant's protests, plaintiff took Sydney to Delaware, where, in July 1996, plaintiff and Porter were married. Later that month, plaintiff informed defendant that she and Sydney were going to stay in Delaware permanently. Defendant then filed an application by order to show cause seeking custody of Sydney. Plaintiff cross-moved for permission to relocate to Delaware. Although the order to show cause restrained plaintiff from permanently changing Sydney's residence from Erie County, plaintiff gave up her apartment in Lancaster and took up permanent residence with Sydney in Porter's mobile home in Ocean View, Delaware. She and Porter have contracted to buy a parcel of land on which to build a house and their mortgage application and house plans have been approved.

It is undisputed that, after the parties separated, defendant faithfully and regularly exercised the frequent visitation that the parties had agreed to and unfailingly paid child support. Before plaintiff moved to Delaware, defendant saw Sydney two evenings a week from 5:00 to 8:00 P.M. and on alternate weekends. Since the move to Delaware, defendant's visitation has been reduced to alternate weekends. The visitation proposed by plaintiff, if relocation is granted, is one long weekend a month during the school year, a long weekend at Thanksgiving, extended time over the Christmas and spring breaks and six weeks during the summer. That schedule would reduce defendant's former visitation by about one half. Plaintiff and Porter indicated that, if permission to relocate is not granted, they will return to the Buffalo area.

The families of both plaintiff and defendant reside in the Buffalo area. This proximity enabled plaintiff's mother to babysit for Sydney during the day until Sydney was 10 months old and, thereafter, defendant's mother provided similar care for Sydney until she was taken to Delaware.

Plaintiff is self-employed as an independent contractor under contract with a company in Pittsburgh, Pennsylvania, for whom she programs computers and does consultation work, earning approximately $56,000 a year. Because she works out of her house, plaintiff can work anywhere in the country. Defendant has worked for Citicorp in Buffalo for 15 years and is an assistant vice-president, earning approximately $40,000 a year. Porter earns approximately $55,000 a year operating the boat during the fishing season and maintaining it in the winter. In Buffalo, he earned approximately $31,000 a year as a welder.

Defendant lives in the marital residence in Clarence, presently sharing it with another man and that man's child. The house was purchased after the parties had carefully investigated the school systems in the Buffalo area and found the Clarence school system to have one of the better educational programs. Both the kindergarten and middle school are located about five minutes from the house.

As a justification for relocation to Delaware, plaintiff testified that she suffers from Raynaud's Syndrome, a condition that causes a restriction of blood flow to her feet and hands in cold weather, and that continued exposure to the cold causes her feet to become purple, swollen and painful. She has not had those problems since moving to Delaware. Porter testified that welding adversely affects his health, causing respiratory problems. Neither plaintiff nor Porter presented any medical evidence regarding the nature and seriousness of their respective conditions and neither lost any time from work in 1996 therefrom. Regardless of how the employment of Porter as a welder may have affected his health, he nevertheless did not change his employment until he was offered the job as the captain of a fishing boat. As noted, plaintiff can work out of her home wherever she lives. Thus, it is apparent that relocation is not based on plaintiff's economic necessity or financial improvement. Rather, it is based entirely on the job preference of Porter.

The child loves both parents and, as the Law Guardian reported, both parties "are reasonable and positive in their attitudes toward each other." Defendant's close relationship with Sydney is not disputed. When plaintiff was working out of town, defendant would take Sydney to his mother's house in the morning, pick her up after work and take her home, where he fed and bathed her, played games with her, read to her, and put her to bed. Defendant testified that he did not seek joint custody because he thought that the parties would continue to reside in Clarence and admitted that plaintiff had objected to joint custody because of his former use of marihuana.

Although plaintiff has paid for the costs of bringing Sydney to the Buffalo area and is willing to continue doing so, the travel time and distance are not inconsiderable. The flight from Philadelphia to Buffalo takes 45 minutes, but the Philadelphia airport is almost two hours from plaintiff's home. The distance from plaintiff's home to Buffalo is 490 miles and it takes about 8½ hours to drive each way. Because of the long commute, Sydney is understandably tired on her arrival.

In *Matter of Tropea v Tropea* (87 NY2d 727), the Court of Appeals set forth the many factors that should be considered in determining an application to relocate. The Court emphasized that "no single factor should be treated as dispositive or given such disproportionate weight as to predetermine the outcome" (*Matter of Tropea v Tropea, supra*, at 738). The best interests of the child are the predominant concern and, in making that determination, consideration and appropriate weight must be given to all of the factors that are relevant.

In its decision, the court properly considered the relevant *Tropea* factors. In doing so, the court concluded that Sydney's best interests would not be served by moving Sydney away from her father and her extended family in Western New York. As the court noted, "that family daycare asset would not be available in the State of Delaware as the only family contact which exists in Delaware [is] attached to the plaintiff's new husband. The emotional stability which attached to close family relationships is a significant factor taken into consideration by the court."

In evaluating the *Tropea* factors against the evidence submitted by plaintiff, it would appear that the only factor plaintiff successfully established by a preponderance of the evidence is her desire for a "fresh start" after her second marriage. That factor, standing alone, is clearly insufficient. Although the case was decided before *Tropea*, what we said in *Richardson v Howard* (135 AD2d 1140) is equally applicable here. "The record establishes that petitioner's sole reason for wanting to move to Michigan is to marry her fiancé and move to his home. That reason, standing alone, is rarely a sufficient justification for allowing the custodial parent to remove the child from the State and interfere with the joint right of the noncustodial parent and the child to enjoy regular, frequent and meaningful visitation [citations omitted]" (*Richardson v Howard, supra*, at 1140).

The previously required showing of exceptional circumstances (*see, Weiss v Weiss*, 52 NY2d 170) is no longer necessary, but the right of regular visitation between a young child and the noncustodial parent is a valuable and substantial one.

What the Court of Appeals said in *Weiss* regarding the role of the noncustodial parent has not changed. "How valuable the mature guiding hand and love of a second parent may be to a child is taught by life itself. This is surely so when the parent-child relationship is carefully nurtured by regular, frequent and welcomed visitation as here" (*Weiss v Weiss, supra,* at 175). In *Tropea,* the Court of Appeals recognized the continuing validity of that observation in its admonition that "the impact of the move on the relationship between the child and the noncustodial parent will remain a central concern" (*Matter of Tropea v Tropea, supra,* at 739). In the absence of counter-vailing proof that the move to Delaware is in the child's best interests, the court properly deemed the continuing relationship between Sydney and her father, together with her extended family, as a central concern, and its decision is a proper reflection of that concern.

This case is not in conflict with our decision in *Matter of Gillard v Gillard* (241 AD2d 966). There, we reversed in the exercise of discretion. The financial situation of the new husband in that case enabled the mother to stop working and stay home full time to care for the young child. Further, unlike here, the noncustodial parent did not seek custody. (Appeal from Order of Supreme Court, Erie County, Gorski, J.— Custody.) Present—Green, J. P., Lawton, Hayes, Wisner and Boehm, JJ. *[See,* 171 Misc 2d 870.]